IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, TENNESSEE

| | |
|---|---|
| ANTHONY BAKER | ) |
| Plaintiff, | ) ) ) |
| and | ) ) No. 3:22-cv-00250 |
| BRIDGEFIELD CASUALTY INSURANCE COMPANY, INC., | ) ) ) |
| Plaintiff/Intervenor | ) ) ) |
| v. | ) ) |
| NYRSTAR CLARKSVILLE INC. and OUTOTEC (USA), INC. | ) ) ) |
| Defendants. | ) |

### PLAINTIFF ANTHONY BAKER'S RESPONSE TO NYRSTAR'S MOTION TO MODIFY THE INITIAL CASE MANAGEMENT ORDER TO EXTEND FACT DISCOVERY BY SIXTY DAYS

Plaintiff Anthony Baker hereby files this Response in Opposition to Defendant Nyrstar Clarksville Inc.'s (hereinafter "Nyrstar") Motion to Modify the Initial Case Management Order and extend fact discovery by sixty days. Contrary to Defendant Nyrstar's statements in its Motion to this Court, Defendant Nyrstar was aware of and in possession of interrogatory responses, medical records, medical bills, medical expense summaries, letters from Plaintiff's Counsel supplementing prior responses, and subpoena responses that identified all of the medical providers it claims not to have known about except for three: a Social Security Disability evaluation that occurred in January 2023, a podiatrist, and Wal-Mart Vision Center eye exam that occurred seven years ago.

Federal Rule of Civil Procedure 16(b)(4) provides that an initial case management order "may be modified only for good cause and with the judge's consent." As noted by Nyrstar, "the

primary consideration of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements. *HLFIP Holding, Inc. v. Rutherford Cnty., Tennessee*, 2021 WL 6498858, *12 (M.D. Tenn. Nov. 15, 2021) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)) (internal quotation marks omitted).

Nyrstar now seeks an additional two months of time to "gather relevant discovery concerning Anthony Baker's medical history" stating that Defendants have been "actively engaging" in discovery. Nyrstar's Motion ignores the medical records, medical bills, supplementation letters, and medical expense summaries it had in its possession, and, by this omission, creates an inaccurate view of its own knowledge to justify the Motion for extension of the fact discovery deadline. Nyrstar's decision to sit on its hands for two and a half years, apparently not review any of the medical record or medical bills in its possession, and not order any additional records until February 2023 is not "good cause" sufficient to justify extension of the fact discovery deadline.

Moving this one deadline due to Nyrstar's delay would harm Plaintiff's preparation for the remaining deadlines in the case, including the impending disclosure of Plaintiff's expert witnesses.

**I. NYRSTAR KNEW OF ALL TREATING MEDICAL PROVIDERS AND BILLING ENTITIES BY MARCH 23, 2021.**

A. PRODUCTION OF TREATING MEDICAL PROVIDERS AND BILLERS

Plaintiff Anthony Baker filed his Complaint against Defendant Nyrstar on April 15, 2020, in the Circuit Court for Montgomery County, Tennessee. From May 8, 2020, to present, Plaintiff identified Mr. Baker's treating medical providers for the injuries arising from the incident on August 8, 2019, and continously produced medical records, medical bills, and medical expense summaries containing supporting documentation of Mr. Baker's ongoing medical treatment. Despite this, Nyrstar's Motion gives the false impression that they were unaware of nine of Mr.

Baker's treating medical providers and states that Mr. Baker did not provide "further information about his treating physicians until March 6, 2023."

By March 23, 2021, all treating medical providers were identified. It is evident that Nyrstar failed to review any of the significant documentation in the form of medical records and bills produced to it – and in some cases produced by Nyrstar itself – over the last several years.

On May 8, 2020, in advance of being served with any formal discovery, Plaintiff produced to Nyrstar[1] medical records and bills from Mr. Baker's treating medical providers for his injuries. (See **Exhibit. 1**, Email Production, May 8, 2020). These six medical providers were: Hickman Medical Clinic, Midstate Pulmonary, Advanced Diagnostic Imaging, Saint Thomas Midtown, Otolaryngology Associates, and Vanderbilt University Medical Center. (See **Exhibit. 1**). Plaintiff also included a medical bill from Premier Radiology for an X-ray that occurred at Midstate Pulmonary. (See **Exhibit 1**).[2] Thus, as of May 2020, Nyrstar was aware of six treating medical providers and one separate billing entity (Prem.

On June 3, 2020, Mr. Baker responded to Nyrstar's First Interrogatories and Requests for Production. Interrogatory No. 9 asked for Mr. Baker to state the name and address of hospitals and clinics where he had treated for his injuries. In response, Mr. Baker identified his medical providers for the injuries to include Hickman Medical Clinic, Midstate Pulmonary, Advanced Diagnostic Imaging, P.C., Otolaryngology Associates of Tennessee, Saint Thomas Midtown Hospital, and Vanderbilt University Medical Center. Plaintiff also referred to the medical records produced to Nyrstar, which provided additional information regarding his treatment. (See **Exhibit**

---

[1] Nyrstar was originally only represented by John T. Feeney, Feeney & Murray, P.C. Aron Z. Karabel and Waller (now Holland & Knight) first appeared as Counsel for Nyrstar in the filing of Nyrstar's First Amended Answer served on December 28, 2021.

3

**2**, June 3, 2020, Production Letter and Medical Expense Summary). On June 17, 2020, Plaintiff produced a HIPAA compliant Medical Authorization form for Nyrstar's Counsel so that Nyrstar could obtain Mr. Baker's medical records and bills. (See **Exhibit 3**, Email Production and Medical Authorization).

On March 23, 2021, Plaintiff supplemented again with additional medical records and medical bills. This supplementation included medical bills for treatment that occurred at the previously identified medical providers. These included: Anatomic and Clinical Laboratory Associates, Anesthesia Medical Group, Superior Medical Supply, and Saint Thomas Hickman Hospital. (See **Exhibit 4**, March 23, 2021, Production Letter and Medical Expense Summary). Plaintiff also produced pharmacy receipts for Liberty Clinic Pharmacy[3] and additional medical records from Vanderbilt University. An updated Medical Expense Summary, which summarized the medical expenses that Mr. Baker incurred as a result of his injuries, that included these medical bills was included with this supplementation. (See **Exhibit 4**).

Throughout Mr. Baker's ongoing medical treatment, Plaintiff continued to supplement updated medical records and bills for his ongoing medical treatment to Nyrstar.[4] (See **Exhibit 5**, Feb. 10, 2021 Production Letter; **Exhibit 6**, July 14, 2021 Production Letter; **Exhibit 7**, March 4, 2022 Production Letter and Medical Expense Summary; **Exhibit 8**, Plaintiff's Initial Disclosures dated August 15, 2022; and **Exhibit 9**, November 8, 2022 Production Letter).

---

[4] On May 23, 2022, Plaintiff provided Counsel for Outotec copies of Mr. Baker's responses to written discovery and document production which included Mr. Baker's medical records, medical bills, and medical expense summaries produced to Nyrstar up to that date prior to Outotec's addition to the case. Outotec was included in all subsequent discovery.

[4] On May 23, 2022, Plaintiff provided Counsel for Outotec copies of Mr. Baker's responses to written discovery and document production which included Mr. Baker's medical records, medical bills, and medical expense summaries produced to Nyrstar up to that date prior to Outotec's addition to the case. Outotec was included in all subsequent discovery.

4

B. ALL TREATING PROVIDERS AND BILLERS DISCLOSED BY MARCH 23, 2021.

As of March 23, 2021, Mr. Baker's all treating medical providers and all separate billing entities had been identified to Nyrstar.[5] This included a total of **twelve** medical providers and related billing entities. From March 23, 2021 forward, Mr. Baker continued to provide Nyrstar with supplemental records and bills for his ongoing treatment.

From the filing of this lawsuit against Nyrstar in April 2020 until after Mr. Baker's January 23, 2023 deposition, Nyrstar took **no** actions to obtain any of Mr. Baker's medical records from his treating medical providers nor any medical bills from the separate billing entities. In fact, Nyrstar did not issue a medical request or subpoena to **any** medical provider until February 2, 2023. For thirty-three months, they used neither subpoenas nor the authorization voluntarily provided by Mr. Baker. Nyrstar just did nothing.

In its Motion, Nyrstar points to two treating healthcare providers, whom Nyrstar claims it has not been able to obtain records from subpoenas despite "diligent" efforts. Those two providers are Advanced Diagnostic and Midstate Pulmonary.

Nyrstar has known about both of them since May 8, 2020. On that date, Plaintiff produced medical records and bills from both providers. (See **Exhibit 1**). To the extent Nyrstar had any question about their relevance, Plaintiff identified them a month later in discovery responses. (See **Exhibit 2**).

---

[5] Out of an abundance of caution, Plaintiff restated the separate billing entities in its March 6, 2023 letter. However, these separate billing entities had previously been disclosed and were not separate medical providers. Further, the corresponding medical providers, medical records, and medical bills had previously been provided to Nyrstar.

5

If Nyrstar thought it needed its own copies of records or bills from those providers, it could have requested them some time before Nyrstar finally served subpoenas in February 2023. A nearly two and a half-year delay in obtaining records is not good cause for extension of the fact discovery deadline and Nyrstar cannot say that it acted diligently when it has had knowledge and possession of documents for these medical providers.

C. NO NEW TREATING MEDICAL PROVIDERS WERE IDENTIFIED IN MARCH 2023.

Nyrstar incorrectly states in its Motion for extension that Plaintiff identified nine new treating medical providers in a March 6, 2023 supplementation. Five of the companies listed in the March 6th letter were billing entities – businesses who **bill** separately for treatment that occurred at a treating provider's office or facility and one was a previously disclosed pharmacy. These six companies were:

- Anatomic and Clinical Laboratory Associates (a separate billing entity for laboratory work performed at Midstate Pulmonary)
- Anesthesia Medical Group (a separate billing entity for anesthesia for a procedure performed at Saint Thomas Midtown)
- Superior Medical Supply (a separate billing entity for the nebulizer kit prescribed at Midstate Pulmonary)
- Saint Thomas Hickman Hospital (a medical bill for an X-ray performed at the Hickman Clinic)
- Premier Radiology-St. Thomas Midtown (Imaging at Midstate Pulmonary)
- Liberty Clinic Pharmacy

(See **Exhibit 1**; **Exhibit 2**, and Exhibit **4**).

These six were all previously disclosed billing entities for previously disclosed medical providers and a previously disclosed pharmacy. Additionally, Plaintiff's Counsel had provided Nyrstar with copies of the corresponding medical records and bills for these six entities as part of the document production.

All six were disclosed by March 23, 2021. (See **Exhibit 1**, **Exhibit 2**, **Exhibit 4**). The providers they are affiliated with were all disclosed even earlier.

There are three others that Nyrstar complains as having been identified for the first time in March 2023 supplementation. One, Columbia Medical & Psychology, was disclosed out of an abundance of caution in Plaintiff's March 6, 2023, letter. This is not a treating medical provider, but where Mr. Baker had his evaluation for determination of Social Security disability benefits performed on January 10, 2023.[6]

Mr. Baker is still undergoing medical treatment for his injuries and likely will have more visits with medical doctors, some of which may be new providers in the future. Defendant Nyrstar should not be permitted to delay the litigation by pointing to recent medical appointments when it is well aware of – and indeed caused – Mr. Baker's condition and ongoing need for treatment.

---

[6] The two remaining entities, Adva-Net and Middle Tennesse Emergency Physician, listed in the March 6th letter were mistakenly identified. Adva-Net is a workers' compensation administrative charge. Middle Tennessee Emergency Physicians is a billing entity for emergency room physicians, but is not a billing entity in this case.

## II. NYRSTAR HAD KNOWLEDGE AND DOCUMENTATION OF MR. BAKER'S PAST MEDICAL HISTORY.

Nyrstar also argues that apart from treating providers, they were unaware of some past providers. Aside from being a podiatrist and Wal-mart Vision, Nyrstar was aware of Mr. Baker's past providers. Nyrstar's main argument centers on Maury Regional Medical Center and records. Maury Regional was first listed in Mr. Baker's June 3, 2020, discovery responses. Nyrstar itself produced records from Maury Regional's Family Health Group First Stop Urgent Care that it obtained from Mr. Baker's employer, Industrial Contractors, in July 2020.

Nyrstar had two-and-a-half years to subpoena records from Maury Regional (including Family Health Group/First Stop Urgent Care), which was first identified in June 2020. As of July 2020, Nyrstar was in possession of medical records from Maury Regional's Family Health Group First Stop Urgent Care. Nyrstar ignores all of this in arguing it should be granted additional time. Nyrstar finally subpoenaed records from Maury Regional in February 2023.

Nyrstar's Motion focuses on these Maury Regional records to inaccurately imply that these records were its first notice of "prior respiratory problems." However, in July 2020, Nyrstar produced the Maury Regional's Family Health Group First Stop Urgent Care record to Plaintiff, which listed a medical history that included respiratory issues. Bronchitis, Asthma, GERD, Asbestos exposure, and Pneumonia were all listed in this record. In fact, Nyrstar questioned Mr. Baker regarding this exact medical record during his January 30, 2023, deposition.

Nyrstar could have obtained Mr. Baker's medical records from Maury Regional at any time in the last two and a half years. It did not. Nyrstar now wants even more time to order and follow up on additional medical records. When Nyrstar finally did take action to order Maury Regional records by subpoena in February 2023, Nyrstar received the records and produced them to Plaintiff by March 2, 2023. This demonstrates that had Nyrstar made any effort in the past two and a half

8

years, it could have received these records years ago. Nyrstar's lack of diligence is not good cause and it should not be rewarded with additional time.

Nyrstar also points to the fact that Maury Regional records obtained by Plaintiff after Mr. Baker's deposition on January 30, 2023, Plaintiff's included medical records from Pulmonary and Critical Care Associates, Inc., which is part of Maury Regional and is requested through Maury Regional. Again, Nyrstar could have acted to obtain medical records over the past two and a half years- the fact that it may have to read these medical records and follow up on additional information, is not good cause for extension when it made no efforts to obtain these records until February 2023.

Nyrstar also points to one prior medical provider, Fast Pace Urgent Care, as a provider that not responded to its subpoena issued on February 1, 2023. Fast Pace Urgent Care was first identified to Nyrstar in Mr. Baker's June 3, 2020, discovery responses as a past medical provider. (See Exhibit 2). Yet again, Nyrstar's years long delay in requesting records should not be a basis for an extension of the fact discovery deadline.

Nyrstar was aware of additional past medical providers contained in the Industrial Contractors records produced by Nyrstar to Plaintiff. These included Skin Solutions, a dermatologist, Maury Regional Ambulatory Care Center, Inc., and The Bone & Joint Clinic, P.C. Additionally, in the documents produced by Industrial Contractors were eight of Mr. Baker's Medical Examination Reports for Commercial Driver Fitness Determination, which include exams performed by J. Caleb Wallwork, MD[7]. These records also contained Rapid Drug Test Results Records required by his employer, which occurred at Workers' Health in Columbia, Tennessee.

---

[7] Dr. Wallwork was mistakenly referenced as Dr. Workman in Plaintiff's March 6, 2023, letter.

9

Case 3:22-cv-00250   Document 39   Filed 04/04/23   Page 9 of 14 PageID #: 241

In its Motion, Nyrstar argues that Skin Solutions, the dermatologist, was a new and unknown provider until Plaintiff's March 6th letter. This is inaccurate. Nyrstar had notice of Skin Solutions, a dermatologist, on July 16, 2020, when it produced a work note from an appointment on December 17, 2018 with Skin Solutions to Plaintiff. Nyrstar should not be permitted to claim it was unaware of a medical provider for a record that it was in possession of since July 16, 2020.

As for Wal-Mart Vision, which was a new provider listed, Mr. Baker recalls going once for a vision exam approximately seven years ago. Therefore, Plaintiff supplemented this provider. It is unclear how Mr. Baker's recent recollection of a one-time vision exam would be significant or establish good cause for extension of the deadlines.

**III. DEFENDANTS MADE NO EFFORTS TO OBTAIN MR. BAKER'S MEDICAL RECORDS OR BILLS IN 2020, 2021, OR 2022.**

Nyrstar took **no** steps to obtain any medical records for Mr. Baker during 2020, 2021, or 2022. During these years, Nyrstar was aware of the following medical providers and billing entities: Hickman Medical Clinic, Midstate Pulmonary, Advanced Diagnostic Imaging, Saint Thomas Midtown, Otolaryngology Associates, Vanderbilt University Medical Center, Premier Radiology, Anatomic and Clinical Laboratory Associates, Anesthesia Medical Group, Saint Thomas Hickman Hospital, Liberty Clinic Pharmacy, Maury Regional Medical Center (including Family Health Group/First Stop Urgent Care), Fast Pace Health Urgent Care, Franklin Orthopaedics & Sports Medicine, Skin Solutions, Maury Regional Ambulatory Care Center, Inc., The Bone & Joint Clinic, P.C., and Workers' Health in Columbia.

In support of its request for an extension of the deadlines and a third deposition of Mr. Baker, Nyrstar includes a portion of the deposition transcript from Mr. Baker on January 30, 2023, in which they contend he admitted that he failed to include a comprehensive list when he responded to discovery on June 3, 2020, which they contend included his "primary healthcare provider,"

Hickman Medical Clinic. However, medical records recently obtained show Mr. Baker had only been to Hickman Clinic one or two times in 2016. Further, medical records produced by Plaintiff in 2020, indicate Mr. Baker had previously gone to that clinic.

Nyrstar's position that it was unable to depose Mr. Baker on his "complete" medical history because it did not have the "entirety of Plaintiff's relevant medical records" ignores the fact that Nyrstar chose not to order any medical records from any of the medical providers and billing entities identified to it over the past 2.5 years through discovery responses, document production, and subpoenaed documents.[8]

Contrary to Nyrstar's characterization, on January 30, 2023, the morning of Anthony Baker's second noticed deposition, Counsel for Nyrstar with Counsel for Outotec approached Plaintiff's Counsel <u>before</u> Mr. Baker's deposition started to state that they needed to obtain additional medical records for Mr. Baker, which they had identified apparently by reviewing his medical records in preparation for the deposition. Counsel specifically referenced a medical record contained in the document production from Industrial Contractors, which they questioned Mr. Baker about during the January 30, 2023, deposition. Despite the lack of any effort on Nyrstar to obtain any medical record of Mr. Baker in advance of the second deposition, in an effort to reach a good faith resolution, Plaintiff's Counsel agreed to make Mr. Baker available for another limited deposition on March 29, 2023, limited to his medical treatment and history. Plaintiff offered to make Mr. Baker available on March 29, 2023. Nyrstar chose not to depose Mr. Baker on that date.

---

[8] Nyrstar states in its Motion that the previously provided "blank" medical authorization was of no use to it because it was not aware of Mr. Baker's past medical history. However, as noted earlier in this Response, Nyrstar made no effort to order records from any medical provider including Maury Regional, which it has been aware of since June 2020. Further, the medical authorization provided was blank so that Nyrstar could fill in any medical provider that it wished to obtain records from, which is a practice used regularly in personal injury cases.

11

## IV. CONCLUSION

Nyrstar had extensive knowledge of Plaintiff Anthony Baker's treating medical providers and medical history long before the fact discovery deadline. Over two and a half years, Plaintiff continuously provided Nyrstar with copies of Mr. Baker's medical records and medical bills for his treating medical providers that followed the incident on August 8, 2019.

Despite this, Nyrstar waited two and a half years to request or subpoena **any** medical providers or billing entities. Nyrstar now asks this Court to reward this two-and-a-half-year inertia by extending the fact discovery deadline for an additional sixty days.[9] The result of this request directly impacts upcoming deadlines in the case management order including Plaintiff's expert disclosure deadline and Defendant's expert disclosure deadline, which risks a domino effect jeopardizing the trial set for this matter. Nyrstar should not be rewarded for its failure to act and has not demonstrated "good cause" for extension of the deadlines in the case management order. Therefore, this Court should deny Nyrstar's Motion and the deadlines from the initial case management order should remain.

Respectfully submitted,

**/s/ Elizabeth Sitgreaves**
_____
Brandon E. Bass, BPR# 22014
Elizabeth Sitgreaves, BPR#027539
LAW OFFICES OF JOHN DAY, P.C.
5141 Virginia Way, Suite 270
Brentwood, TN 37027
Telephone:   615.742.4880
Facsimile:   615.742.4881
*Attorneys for Plaintiff*

---

[9] Nyrstar's Motion initially asks for sixty days; however, at the conclusion of its Motion asks for an extension only until April 28, 2023. Plaintiff assumes that this is an error.

**CERTIFICATE OF SERVICE**

       This is to certify that, on April 4, 2023, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Aron Karabel
    Aron.Karabel@hklaw.com
    Frederick L. Conrad III
    Trip.Conrad@hklaw.com
    Elizabeth Malloy
    elizabeth.malloy@hklaw.com
    Devin Dunkley
    Devin.Dunkley@hklaw.com
    HOLLAND & KNIGHT
    511 Union Street, Suite 2700
    Nashville, TN 37219
    (615) 244-6380
    *Attorney for Defendant*
    *Nyrstar Clarksville Inc.*

    John T. Feeney
    Feeney & Murray, P.C.
    9019 Overlook Blvd.
    Suite D-4
    Brentwood, TN 37027
    (615) 377-9000
    jtf@feeneymurray.com
    *Attorney for Defendant*
    *Nyrstar Clarksville Inc.*

    Taylor B. Mayes
    Taylor.Mayes@butlersnow.com
    Matthew R. Hinson
    Matt.hinson@butlersnow.com
    Butler Snow LLP
    The Pinnacle at Symphony Place
    150 3rd Avenue South
    Suite 1600
    Nashville, TN 37201
    (615) 651-6700
    *Attorney for Defendant*
    *Outotec (USA) Inc.*

Scott J. Crosby
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103
(901)524-5000
scrosby@bpjlaw.com
*Attorney for Bridgefield Casualty Insurance Company*

                                        **/s/ Elizabeth Sitgreaves**
                                        Elizabeth Sitgreaves